UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JENNIFER JAKOBEK, | CIV 09-1013 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| UNITED OMAHA LIFE INSURANCE COMPANY, a Nebraska corporation with its principal office at Mutual of Omaha Plaza, Omaha, Nebraska, | |
| Defendants | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought suit against defendant to recover life insurance benefits under two policies issued by defendant covering her deceased husband, Fred Jacobek. Defendant filed a motion for summary judgment, contending that there is no genuine issue of material fact that plaintiff's husband was never eligible for coverage before his death. Defendant also filed a motion to strike certain documents filed by plaintiff in opposition to the motion for summary judgment.

## FACTS

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). In considering the motion for summary judgment, this Court must view the facts in the light most favorable to the non-moving party, plaintiff, and give plaintiff the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-98. The undisputed facts are set forth below.

Fred Jakobek ("Fred") was employed by Angus Industries, Inc. ("Angus") of Watertown, South Dakota, as the director of materials. Angus and its employees were covered by group

insurance plans prior to 2007. Effective January 1, 2007, Angus switched insurance providers to defendant United of Omaha ("United"). Angus paid premiums to United for a $100,000 basic group life policy for each of its executive employees who had been employed full time for at least 60 days, including Fred. Fred was also entitled to and did enroll in and pay premiums for a voluntary group life insurance plan providing additional coverage of $150,000 without requiring proof of health. Fred designated his wife Jennifer as the beneficiary to both the basic and voluntary policies.

Angus hired United to administer its existing short term disability plan. Angus retained the discretion to determine the payment of benefits under this policy, which benefits were paid by Angus. The life policy plans were governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* United did not retain discretionary review of the life plans.

In 2001, Fred was diagnosed with lymphoma. He was in remission until May 2003. He underwent a stem cell transplant in 2004. He experienced a relapse again in 2005 and underwent additional treatment into 2006. A blood cot developed in November and December of 2006, was hospitalized for five days, and was discharged from the hospital to a nursing home. He was hospitalized again from December 28, 2006, to January 3, 2007. He was discharged and returned home on January 3, 2007, for home therapy. He was restricted to minimal weight bearing, bed rest with leg elevation most waking hours, and instructed to not resume routine work habits until one wee k of bed rest. During the January 1-4, 2007, time period, Fred sent some work related emails.

Fred was again hospitalized January 7-9, 2007, in Watertown. From January 9-29, 2007, he was hospitalized in Sioux Falls, South Dakota.

On January 28, 2007, Fred applied for short term disability benefits, claiming on onset date of January 9, 2007. In response to United's inquiry in conjunction with his application, Angus' Human Resources Administrator notified United that the last date Fred actually worked was December 21, 2006, although he was paid his full salary through January 31, 2007. Disability benefits were approved with a beginning date of February 1, 2007. There was no disability elimination period.

2

Fred was again hospitalized in Sioux Falls February 12 - March 9, 2007, and was awaiting a transplant. He did not return to work. Fred died on June 15, 2007.

Plaintiff filed a claim for Fred's life insurance benefits under the basic and voluntary policies. In the application, she indicated Fred's last date of work was January 8, 2007. United investigated the claim and conducted a medical records review. United's reviewing physician "determined from the medical information in the file that Mr. Jakobek was extremely ill receiving phase 1 trial drug and RICE chemotherapy November 06 through January 07 and it is questionable that he could have been working 30 hours a week during this time frame."

United denied plaintiff's life insurance claim on September 17, 2007. United contended that, due to Fred's hospitalization in late December 2006 through early January, 2007, his life insurance coverage did not begin until February 1, 2007. United contended that Fred was disabled on February 1, 2007, through the date of his death so coverage never took effect. Angus's agent appealed the denial of life insurance benefits. United denied the claim again on December 28, 2007. United returned the approximately $700 in premiums paid on behalf of Fred between January 1, 2007, and June 15, 2007.

As background (facts that are not material but have not been admitted by the defendant), the basic insurance coverage at Angus' expense was for the amount of the employee's annual salary, up to $100,000. Fred had been a full time permanent employee since 2005 and was, at the time of his December 2006, hospitalization, a senior management executive with a salary in excess of $100,000. Prior to United taking over providing life insurance for Angus effective January 1, 2007, Fred had both basic and voluntary life insurance coverage through the previous insurance provider.

Plaintiff contends that the defendant's "confinement rule" which defendant relied upon to deny plaintiff's claim for her husband's life insurance benefits was not part of the plan documents until April 1, 2007. In fact, plaintiff claims, Angus never received master plan policies until November 28, 2007. United had, however, approved Fred's long term disability insurance coverage despite the fact that he was hospitalized on January 1, 2007. United has, since plaintiff's claim for life insurance benefits, disavowed that plaintiff was eligible for

3

disability benefits because he was not working 30 hours per week when the policy went into effect on January 1, 2007.

Angus' Human Resources Director signed an affidavit stating that the plant was shut down December 25-29 (Monday-Friday). January 1, 2007, was a Monday. Thus, it would appear that no employee would be actually putting in 30 hours the week before the policy went into effect. According to the HR Director, Fred continued to provide services to the company through January 31, 2007 and was compensated his full salary and eligible for all benefits through that date. HR stated that Fred actually sent and received 71 emails January 1-5. HR also submitted the company issued cell phone records which show that Fred was working, although not at the plant, during the time period in issue. HR contends that they never received master policy documents until beginning in April 2007 and the proposed documents received were never approved by Angus because they differed from what Angus expected. Angus ended its relationship with Mutual of Omaha over this issue.

## DECISION

"The proper construction of an insurance contract is an issue of law, and thus well suited for summary judgment." Kroeplin Farms General Partnership v. Heartland Crop Insurance, Inc., 430 F.3d 906, 909 (8th Cir. 2005). An insurer relying upon policy language to exclude or limit its liability to the insured "has the burden of proving the exclusion applies, and we must resolve any ambiguity in favor of the insured. O'Daniel v. NAU Country Ins. Co., 427 F.3d 1058, 1060 (8th Cir. 2005). "[W]here there is not ambiguity, we must resolve the insurance contract as it is written." Id.

> Under South Dakota law, we determine, de novo, whether the insurance policy terms are ambiguous, and look to "the policy as a whole and the plain meaning and effect of its words." *Nat'l Sun Indus., Inc. v. South Dakota Farm Bureau Ins. Co.*, 596 NW2d 45, 48 (S.D.1999) (*quoting Economic Aero Club v. Avemco Ins. Co.*, 540 NW2d 644, 645 (S.D.1995)). Ambiguity exists where the insurance policy language "is fairly susceptible to two constructions," and "will not be created merely by one party offering a different interpretation of the contract language." *Am. Family Mut. Ins. Group v. Kostaneski*, 688 NW2d 410, 413 (S.D.2004) (*quoting Nat'l Sun Indus., Inc. v. South Dakota Farm Bureau Ins.*, 596 NW2d 45, 48 (S.D.1999)).

O'Daniel v. NAU Country Ins., 427 F.3d at 1060.

United cannot show a master policy in force on January 1, 2007, which was agreed to by Angus and United. Genuine issues of material fact exist as to whether the claimed impediment to Fred's eligibility was part of the insurance contract. Genuine issues of material fact exist as to whether Fred was in fact actually working on January 1, 2007 (a holiday) or was, on that date "on a regular and consistent basis working 30 or more hours each week," the eligibility requirement United contends entitles it to deny benefits.

SDCL 58-16-38 provides: "Except as provided in § 58-16-31, a policy of group life insurance shall contain a provision that the insurer will issue to the policyholder for delivery to each person insured an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom the insurance benefits are payable, and the rights and conditions set forth in §§ 58-16-39 to 58-16-41 inclusive." United claims there is no deadline for any such delivery. The statute does not require a delivery date and an issue of fact therefore exists as to whether there was "reasonable" compliance with the statute. It is undisputed that Fred had no information at all about the exclusions now claimed by United. He had no opportunity to decide whether or how to comply with any policy requirements.

SDCL 58-15-45 provides: "No policy of life insurance may be delivered or issued for delivery in this state if it contains any provision which excludes or restricts liability for death caused in a certain specified manner or occurring while the insured has a specified status . . . " United does not contend that the word "status" does not include being hospitalized or disabled. United contends that Fred was never "insured" and thus could not come within the terms of the statute. This argument is akin to a dog chasing its tail. It would be an unreasonable reading of the statute. United's argument is that Fred could not be an insured because he was in a "specified status." This argument should be rejected.

United contends that there could have been no coverage until, at the earliest, February 1, 2007, obviously the first day of the month. United has submitted exhibit one with Doc.38. The "Employee eligibility" section includes the confinement rule. United's language is that, if an eligible employee is confined due to an injury or sickness, insurance will begin on the "first day of the Policy month which coincides with or follows the day the employee returns to active employment." The word "coincides" means "to occur at the same time." Thus, the coverage

5

would be effective, at a minimum, on the day Fred returned to active employment (assuming he ever left active employment). That date would not be February 1. Both January and February were "policy months."

United's language also provides that an employee "will be considered Actively Working on any day that is: (a) a regular paid holiday or day of vacation; or (b) a regular or scheduled non-working day, provided the Employee was Actively Working on the last preceding regular work day."

United's language may also be read as not subjecting disabled employees to the requirement of active employment or actively employed. Following the definition of "Actively Working or Actively Employed", we find this sentence: "This does not include Disabled Employees." Was Fred a "disabled employee"?

United claims that the court should not consider evidence outside the claimed administrative record but remand to allow United to consider any such evidence. There is, however, no request by United to actually reconsider its denial. Obviously, if United wishes to reconsider, it need only offer to pay benefits, taking into account the information now submitted. It would be an exercise in futility to remand to United, already a party to this lawsuit. There is no claim by United that it might change its position, based on any additional information. The motion to strike should be denied. Any lawsuit is a search of truth and justice. This court will not frustrate any such search in this case.

## ORDER

Based upon the foregoing,

IT IS ORDERED:

1. Defendant's motion, Doc. 19, for summary judgment is denied.
2. Defendant's motion, Doc. 35, to strike is denied.

Dated this 27th day of July, 2010.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
DEPUTY
(SEAL)